WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>             Plaintiff,<br><br>v.<br><br>Cory Ryan Williams,<br><br>             Defendant. | No. CR-17-01279-001-PHX-DLR<br><br>**ORDER** |

Before the Court is Defendant's Emergency Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release Including Release Due to COVID-19), which is fully briefed. (Docs. 52, 58, 62.) Defendant moves for a compassionate release order that converts the remainder of his sentence to a term of supervised release and adds a condition of home confinement to allow him to serve the remainder of his sentence at his parents' unattached single family residence in Gilbert, Arizona, where he will be at significantly reduced risk for contracting COVID-19. The Court took the motion under advisement after oral argument on January 29, 2021.

**I. Background**

Defendant was sentenced to serve 84 months in the Bureau of Prisons ("BOP") for transactional money laundering. (Doc. 39.) He has been in custody since September 17, 2018. Factoring in credit for good time, Defendant has served roughly 40% of his custodial sentence.

Defendant is housed at FTC Tucson, where COVID-19 infection rates have been significantly high. Because of the close-confinement nature of the prison environment, inadequate ventilation, limited personal protective equipment, difficult-to-maintain hygiene standards, and chronic medical conditions among prisoners, prisons in general have been identified as high-risk environments for the spread of the virus. As of September 2020, the COVID-19 case rate among incarcerated individuals was more than four times that of the U.S. population and the mortality rate was twice as high.[1]

According to the BOP COVID-19 website, more than 40% of the total population at FCI Tucson had tested positive for COVID-19 at the time of the filing of the motion. The FCI Tucson infection rate is worse than the statistics described for prisons across the United States. Defendant asserts in his motion that there is a lack of common-sense precautions employed at the FCI Tucson facility. He alleges that inmates are not being provided with cleaning solutions for their individual cells, materials to clean common areas, and personal hygiene equipment. He alleges that inmates are exposed to a rotation crew of numerous guards who move in and out of the pods. (Doc. 52-7.)

## II.  The First Step Act

Until passage of the First Step Act of 2018 ("FSA"), early release was allowed only upon motion of the Director of the BOP. However, under the FSA a defendant can bring a motion to the Court after exhausting his administrative remedies:

> [T]he court upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment[.]

18 U.S.C. § 3582(c)(1)(A). The Court may grant a compassionate release and convert the remainder of a sentence to home confinement if it finds that "extraordinary and compelling

---

[1] *See* K. Schnepel, COVID-19 in U.S. State and Federal Prisons, Council on Criminal Justice, September 2020, available at https://cdn.ymaws.com/counciloncj.org/resource/resmgr/covid_commission/FINAL_Schnepel_Design.pdf.

reasons warrant such a reduction" and the reduction is consistent with the Sentencing Commission policy statements found in U.S.S.G. § 1B1.13.  *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Young*, No. 2:00-cr-0002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) ("Although it does not appear that any federal circuit court of appeals has addressed this issue, a majority of the district courts that have considered the issue have likewise held, based on the First Step Act, that they have the authority to reduce a prisoner's sentence upon the court's independent finding of extraordinary or compelling reasons.").

The Sentencing Commission set forth three specific categories that qualify as extraordinary and compelling: terminal medical conditions, medical debilitation, and family circumstances.  U.S.S.G. § 1B.13, App. Notes 1(A)-(C).  A catchall—other reasons—may act "in combination" with the prior categories or might be wholly independent.  *See* U.S.S.G. § 1B1.13, App. Note 1(D).  The Sentencing Commission policy statement requires a finding that the "defendant is not a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2) & App. Note 1(A)(ii)(I), (III).

These policy statements pre-date the enactment of the FSA, which made significant changes to § 3582(c)(1)(A) intended to "increase the use of compassionate release," by entrusting district courts with discretion previously reserved for the director of the BOP. *United States v. Brown*, 411 F.Supp.3d 446, 449 (S.D. Iowa 2019); *see also United States v. Vigneau*, 97-cr-33-JJM-LDA, 2020 WL 4345105, at *3-4 (D.R.I. Jul. 21, 2020).  When deciding whether a sentence reduction is consistent with the Sentencing Commission policy statements, the Court recognizes that the FSA broadened its authority to act on a vast variety of circumstances that may constitute extraordinary and compelling circumstances.  *Brown*, 411 F.Supp.3d at 449.

The purpose of the compassionate release provisions of the FSA is to allow defendants with extraordinary and compelling reasons to receive an expeditious resolution of a request for early release.  An expeditious determination is especially important in a situation like the present, in which the coronavirus is rapidly spreading, and the likelihood

of contracting COVID-19 increases substantially by remaining in the BOP facility.

## III. Exhaustion of Administrative Remedies

The starting point of the Court's § 3582(c)(1)(A) inquiry is whether Defendant has exhausted his administrative remedies by filing an administrative request for compassionate release with the warden of his facility. It is undisputed that Defendant submitted a compassionate release request to the Warden at USP Tucson, the Warden denied his request, and more than 30 days passed before he filed this motion. Defendant has exhausted his administrative remedies.

## IV. Extraordinary and Compelling Reasons

Defendant argues extraordinary and compelling reasons for his early release exist based on his fear that he will suffer an adverse outcome due to contracting the virus. Defendant claims to have three health factors that the Centers for Disease Control and Prevention ("CDC") has identified as leading to increased risk of severe illness from the virus: asthma, a heart murmur, and being overweight. However, Defendant has not presented facts that contradict the Government's description of him as "a healthy 43-year-old who is slightly overweight and appears to suffer from a mild case of asthma." (Doc. 58 at 1.)

Defendant argues that the Court should consider his history of being obese. Although Defendant is overweight, he has not presented evidence that he is obese. Defendant's Body Mass Index ("BMI"), 28.6, is considered overweight but is not categorized by the CDC as obese. The CDC has classified being overweight as a condition that "might" increase risk for severe illness.

The Government correctly points out that Defendant's other two health conditions fall short of being placed in even the "might be at increased risk" category. Although severe to moderate asthma might lead to an increased risk, Defendant's medical records (Docs. 52-1 - 57-1) indicate that his asthma is neither moderate nor severe. The records show that he has a mild case of exercise-induced asthma. He has not needed an inhaler for over ten years, and he wheezes only when he works out. Defendant presents no evidence

that a heart murmur has been classified as a condition that places him at higher risk should he become infected with the COVID-19 virus.

Defendant has not shown extraordinary and compelling reasons for his immediate release. The most he has shown is that his weight "might" increase his risk for severe illness. Defendant has not shown that it is probable that his underlying medical conditions put him at increased risk for serious illness should he contract the COVID-19 virus. Defendant's own behavior is inconsistent with his position that he believes he is at increased risk from the virus. Defendant admitted to the Court during the January 29, 2021 oral argument that on January 6, 2021, he was offered the vaccine, but refused it. The Court finds his explanation for refusal, that he did not trust the Food and Drug Administration's emergency use authorization process, to be incredible in light of his claim that his risk of a serious illness from the COVID-19 virus is an extraordinary and compelling reason for his immediate release.

**IT IS ORDERED** that Defendant's Emergency Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release Including Release Due to COVID-19) (Doc. 52) is **DENIED**.

Dated this 1st day of February, 2021.

Douglas L. Rayes
United States District Judge